## FIRST STATE BANK OF CLAREMONT, Plaintiff, v. SMITH et al, Defendants.

### (207 N. W. 467.)

(File No. 6164.  Opinion filed February 24, 1926.)

1,   **Banks and Banking—Depositors' Guaranty Fund—Eminent Domain—Taxation—Assessment Against State Banks for Depositors' Guaranty Fund Held Not Tax or Involuntary Taking of their Property (Rev. Code 1919, Sec. 9011).**

Assessment against state banks, under Rev. Code 1919, Sec. 9011, for depositors' guaranty fund, held not a tax or involuntary taking of their property, but a part of a consideration, exacted by the state for the corporate franchise.

2.   **Banks and Banking—Depositors' Guaranty Fund—State Banks Cannot Claim They Have Not Consented to Operate Under Depositors' Guaranty Law After Enjoying Benefits for 10 Years.**

State banks, who for 10 years have operated under the benefits of Depositors' Guaranty Law, giving them the right to hold public money and deposit without additional security, and other benefits, held not in a position to now claim that they have not consented thereto.

3.   **Banks and Banking—Constitutional Law.**

Laws 1915, c. 102, as to depositors' guaranty fund, held constitutional.

4. Constitutional Law—Depositors' Guaranty Law Held Not to Violate Due Process Clause (Laws 1015, c. 102; Const. S. D. art. 6, Sec. 2; Const. U. S. Amend. 14).

Laws 1915, c. 102, providing for depositors' guaranty fund and commission to administer such fund, does not violate Const. S. D. art. 6, Sec. 2, or Const. U. S. Amend. 14, relative to due process.

5. Eminent Domain—Depositors' Guaranty Law Held Not to Violate Provision That Private Property Shall Not be Taken for Public Use Without Compensation (Laws 1915, c. 102; Const. art. 6, Sec. 13).

Laws 1915, c. 102, providing for depositors' guaranty fund and commission to administer such fund, does not violate Const. art. 6, Sec. 13, providing that private property shall not be taken for public use without compensation.

6. Constitutional Law—Depositors' Guaranty Law Held Not to Violate Provision That No Class of Citizens or Corporations Shall be Granted Privileges or Immunities (Laws 1915, c. 102; Const., art. 6, Sec. 18).

Laws 1915, c. 102, providing for depositors' guaranty fund and commission to administer, does not violate Const., art. 6, Sec. 18, providing that no class of citizens or corporations shall be granted privileges or immunities not belonging to others.

7. Constitutional Law—Depositors' Guaranty Law Held Not to Violate Provision That All Men Have Inherent Right of Acquiring and Protecting Property (Laws 1915, c. 102; Const, art. 6, Sec. 1).

Laws 1915, c. 102, providing depositors' guaranty fund and commission to adminster such fund, does not violate Const. art. 6, Sec. 1, providing that all men have inherent right to acquire and protect property.

8. Taxation—Depositors' Guaranty Law Held Not to Violate Provision That Taxes Shall Be Uniform (Laws 1915, c. 102; Const. art. 11, Sec. 2).

Laws 1915( c. 102, providing for depositors' guaranty fund and commission to administer such fund, does not violate Const. art. 11, Sec. 2, providing that taxes shall be uniform and collected for public purposes only.

9. Constitutional Law—Depositors' Guaranty Fund Held Not to Abridge Immunities of Citizens or Deny Equal Protection of Laws (Laws 1915, c. 102; Const. U. S. Amend. 14).

Laws 1915, c. 102, providing for depositors' guaranty fund and commission to administer such fund, does not violate Const. U. S. Amend. 14, prohibiting abridgement of immunities of citizens or denial of equal protection of the laws.

Original action by the First State Bank of Claremont for a writ of prohibition against F. R. Smith, as Superintendent of Banks, H. R. Kibbe and others, constituting the Depositors' Guaranty Fund Commission. On order to show cause. Writ of prohibition denied.

*Hitchcock & Sickel,* of Mitchell, *F. E. Snider,* of Faulkton, and *A. L. Beardley,* of Ipswich, for Plaintiff.

*Buell F. Jones,* Attorney General, for Defendants.

*Roy E. Willy,* of Platte, and *Gardner & Churchill,* of Huron, amici curiæ.

(4) and (7) To points four and seven of the opinion, Respondent cited: Noble State Bank v. Haskell, 211 U. S. 104; Shallenberger v. First State Bank of Holstein, 219 U. S. 114.

(5) To point five, Respondent cited: Assari State Bank v. Dolley, 219 U. S. 121.

(8) To point eight, Respondent cited: First National Bank v. Hirning, 204 N. W. 901.

BURCH, C. This is an original proceeding on an order to show cause, obtained upon a verified petition and affidavit for a writ of prohibition. Plaintiff brings it in its own behalf, and on behalf of all other banks of the state similarly situated, to prevent the defendants, who constitute the depositors' guaranty fund commission, from levying assessments under section 9011, R. C. 1919. The constitutionality of the Depositors' Guaranty Law, of which section 9011 is a part, is attacked because, it is claimed, the law violates the following enumerated provisions of the state Constitution.

Section 2, art. 6, providing that:

"No person shall be deprived of life liberty or property without due process of law,"

Section 13, art. 6, providing that:

"Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken,"

Section 18, art. 6, providing that:

"No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations,"

Section 1, art. 6, providing that:

"All men are born equally free and independent, and have certain inherent rights, among which are those of enjoying and defending life and liberty, of acquiring and protecting property and the pursuit of happiness,"

Section 2, art. 11, providing that:

"Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only,"

And that portion of the Fourteenth amendment to the federal Constitution providing that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

The complaint alleges, besides the jurisdictional and formal facts:   That the average daily deposits of all state banks open and doing business are approximately $100,000,000; that the total money in the depositors' guaranty fund does not exceed $320,-820.31, and a levy will therefore be made unless defendants are restrained; that the state banking system of the state consists of 381 state banks; that if an assessment is made and collected of plaintiff it will be compelled to pay to the fund thereunder the sum of $497; that there are now 282 insolvent state banks, exclusive of the banks whose deposits have been paid in full from the depositors' guaranty fund, and exclusive of those which have been reorganized; that the total liabilities of such banks are $43,379,-992.91; that the assets of all said banks will not be sufficient to pay more than 50 per cent of said liabilities; that interest-bearing guaranty fund certificates of indebtedness have been issued or will be issued to cover all said liabilities of said defunct banks, and the total amount that can be levied and assessed under said law will be far short of the amount required to pay the interest on said deposits, and for that reason the said depositors' guaranty fund is so helplessly insolvent that it is now of no use or benefit to the solvent banks, affords no protection to depositors therein, and that to levy and collect the assessment under such circumstances is in violation of the above quoted constitutional provisions. Defendants demurred to the complaint.   Therefore, under these facts, we must determine the constitutionality of the law involved.

While counsel for plaintiff do not expressly admit that the law was constitutional at its inception, they have not devoted much time in argument on that point. They contend that, even though it may have been constitutional when enacted, changed conditions now render the act violative of the Constitution. They reason from railroad rate cases which have at one time been held constitutional because the rates fixed by statute are reasonable and not confiscatory, and later under changed conditions such rates became unreasonable and confiscatory and therefore unconstitutional. But there does not appear to be any analogy between those cases and this. It is well known that in trade and commerce prices are subject to fluctuation, and what it a reasonable charge for a service today may not be tomorrow, because not in just proportion to other prices and charges. In this case the objection is not to the amount of the charge, but to the purpose for which it is made. Changed conditions have not changed the purpose. If the purpose of the law was legitimate, and the act therefor constitutional at the time of its enactment, perforce it must remain so, although because of changed conditions its purpose is no longer useful or desirable. Its uselessness may be a cogent reason for its repeal by the lawmakers, but it can have no weight with the court in construing it. If the law was constitutional when enacted, it now is, and all that portion of the complaint pertaining to changed conditions is immaterial in the inquiry now before us.

The section objected to forms a part of the banking act under which all state banks have been operating for over ten years—namely, chapter 102, S. L. 1915. This act provides for the establishment of a department of banking, for the incorporation of banking corporations, for a depositors' guaranty fund and a commission to administer such fund, for the liquidation of insolvent banks, and for practically all other provisions pertaining to banking. It forms a part of the charter of the state banking corporations. Statutes creating a depositors' guaranty fund have been enacted in many states. Some of the earlier statutes required contribution only from banks which should be chartered subsequent to the passage of the act, or banks which should elect to take the benefit of the fund and contribute to its establishment. These statutes were not attacked upon constitutional grounds, be-

cause the creation of the fund was by contract.  Later statutes in many states have made it compulsory upon the state banks to contribute according to the amount of their deposits to such fund.  These statutes have been unanimously upheld by the state courts, and the United States Supreme Court has declared that such statutes do not violate the federal Constitution, at least in so far as they apply to corporations organized after their enactment, or to corporations organized before, whose charters were subject to a reserved power of altering, amending, or repealing. Noble State Bank v. Haskell, 31 S. Ct. 186, 219 U. S. 104, 55 L. ed. 112, 32 L. R. A. (N. S.) 1062, and note, Ann. Cas. 1912A, 487, and note; Id., 31 S. Ct. 299, 219 U. S. 575, 55 L. ed. 341; Shallenberger v. First State Bank of Holstein, 31 S. Ct. 189, 219 U. S. 114, 55 U. S. 117; Assaria State Bank v. Doley, 31 S. Ct. 189, 219 U. S. 121, 55 L. ed. 123.  The right to alter, revise, or annul the charter of a corporation is expressly reserved in section 9, art. 17 of our Constitution.  Since the decision in the celebrated Dartmouth College Case (Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629), it has been the settled doctrine of this country that the charter of a corporation is a contract between the incorporators and the state.  Judge Morling, in the case of Hirning v. Hamlin (Iowa) 206 N. W., at page 619, says:

"The state of South Dakota, in the exercise of its sovereign right of creating and regulating banking corporations, might undoubtedly annex to the privileges granted such terms and conditions as it saw fit, and by the act of taking stock the stockholder impliedly assented to them.  Such terms and conditions thereby became obligatory upon the stockholder, contractual in their nature."

[1-9]   So far as the banking corporations are concerned, the assessment sought to be prohibited is not a tax or involuntary taking of their property, but a part of the consideration exacted by the state for the corporate franchise.  So, also, is the law a part of the privileges and conditions under which the unincorporated banks were organized and have been doing business.  Such banks for ten years, accepted the benefits of the depositors' guaranty fund, which gave to them the right to hold. on deposit, public moneys without additional bond or security, to enjoy the confidence of the public by reason of the existence of such guaranty

fund, and all other benefits, real or supposed, emanating there from, and they are not now in a position to claim they have not consented thereto. We rest the case upon the proposition that the assessment sought to be levied is not a tax or involuntary taking of the property of any of the state banks, but in closing we make this observation: That we know of no case, and none has been called to our attention, where a similar statute has been held unconstitutional on any ground. Such provisions have been sanctioned, by eminent authority, as a legitimate exercise of the police power.

We are satisfied the constitutional objections urged are without merit, and for that reason the writ of prohibition applied for is denied.